# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAELONI DALE MARKS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:16-cv-1701-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I.    BACKGROUND

Plaintiff filed an application for a period of disability and DIB, alleging that she had been disabled since October 2, 2009. Administrative Record ("AR") 247-248. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 158-161, 163-167. On August 31, 2015 and February 2, 2016, hearings were held before administrative law judge ("ALJ") Peter F. Belli. *Id.* at 37-125. Plaintiff appeared without counsel at the first hearing. *Id.* at 37-94. However, she was

1

represented by a non-attorney representative at the second hearing, at which she provided further testimony and a vocational expert also testified. *Id.*

On March 25, 2016, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 18-29. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant did not engaged in substantial gainful activity during the period from her alleged onset date of October 2, 2009 through her date last insured on December 31, 2014 (20 CFR 404.1571 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3. Through the date last insured, the claimant had the following severe impairments: interstitial cystitis, degenerative arthritis, posttraumatic stress disorder (PTSD), and major depression (20 CFR 404.1520(c)).

\* \* \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant could lift and/or carry ten pounds frequently, twenty pounds occasionally; she could stand and/or walk for six hours out of an eight-hour workday; she could sit for eight hours out of an eight-hour workday with the option to stand every thirty to forty minutes; she is not to climb ladders, ropes or scaffolds; she could occasionally stoop, crawl, kneel and crouch; she is limited to simple instructions with occasional detailed instructions and simple workplace changes; and she could have frequent interaction with the public, co-workers and supervisors.

\* \* \*

6. Through the date last insured, the claimant was capable of performing past relevant work as a claims clerk I and II. This work did not require the performance of work-related activities (20 CFR 404.1565).

\* \* \*

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 2, 2009, the alleged onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(f)).

*Id.* at 20-29.

Plaintiff's request for Appeals Council review was denied on June 23, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-4.

II. <u>LEGAL STANDARDS</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

/////

*Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. <u>ANALYSIS</u>

Plaintiff argues that the ALJ erred by (1) failing to consider the impact her psoriatic arthritis had on her ability to work, (2) rejecting her subjective statements absent sufficient reasons, (3) finding she has the residual functional capacity to perform light work, and (4) relying on the vocational expert's testimony to find that she could perform past prior work. ECF No. 15-1 at 21-32. Plaintiff also argues that (5) the Appeals Council erred by failing to consider new and material evidence. *Id*. at 32-34.

A. <u>The ALJ Failed to Consider Plaintiff's Psoriatic Arthritis</u>

Plaintiff first argues that the ALJ erred by failing to consider evidence showing that she has psoriatic arthritis. ECF No. 15-1 at 21-26. She contends that as a result, the ALJ failed to consider how this medical impairment impacted her ability to work. *Id*. at 25-26. She also argues that the ALJ failed to satisfy his duty of fully developing the record concerning this impairment. *Id*.

In determining whether a claimant is disabled, the ALJ is required to consider all the evidence of record. 20 C.F.R. § 404.1520(a)(3); *see Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th

4

Cir. 2014) ("In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medical determinable impairments, including those that are not severe.") *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (if one severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential evaluation). Although the ALJ is not required to discuss every piece of evidence in the record, the ALJ "must explain why probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quotations omitted); *see Howard ex rel. v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ is not required to "discuss evidence that is neither significant nor probative.").

Treatment records show that in June 2014, plaintiff experienced pain and stiffness in the joints in her hands, with puffy fingers and metacarpophalangeal joints ("MCP"). AR 975. At that time, plaintiff's treating physician, Dr. Badour, suggested a referral to rheumatology, noting concerns that plaintiff's symptoms were caused by psoriatic arthritis or another inflammatory process. *Id*. In August 2014, plaintiff again complained of pain in her MCPs. AR 972-973. In her left hand she had swelling and pain in her joints, with stiffness noted on range of motion. *Id*. at 973. Dr. Badour noted that her symptoms were likely caused by an inflammatory process and that plaintiff was waiting to see a rheumatologist. *Id*. at 974.

The following week, plaintiff was seen by Dr. Michael Barger for a rheumatology consultative evaluation. *Id*. at 918-922. Plaintiff reported chronic joint pain that had worsened over the past 6 to 8 months, which caused difficulty gripping and decreased range of motion. *Id*. at 918-919. On exam, she presented with lesions over her extremities and had a rash that appeared typical of psoriasis. *Id*. at 918, 921. There was "tenderness diffusely in the bilateral upper and lower extremities but also tenderness in the bilateral wrists" and finger joints, with swelling and decreased range of motion. *Id*. at 921. On September 19, 2014, Dr. Barger stated, "I think that [plaintiff has] a diagnosis of arthralgia and degenerative arthritis," which may be chronic. *Id*. at 938. Dr. Barger observed that radiography showed degenerative changes in the hands, shoulders, and hips. *Id*. However, subsequent medical records indicate that Dr. Badour's initial hypothesis did not prove to be entirely accurate.

In early 2015, plaintiff began receiving treatment from Stanford Health Care. In March 2015, Dr. Matthew Baker, a Rheumatology Fellow, stated that plaintiff "clearly has an inflammatory polyarthritis, but it is difficult to hone in on an exact constellation of symptoms given her" chronic and widespread pain. *Id*. at 959. He also noted that there was no doubt that her "bilateral wrists and MCPs have active synovitis." *Id*. Two months later, however, Dr. Baker determined that plaintiff had psoriatic arthritis. Although the diagnosis was not obtained until mid-2015, after plaintiff's date last insured, Dr. Baker explained that:

> It has been clear from the beginning that she has an inflammatory polyarthritis, but it was initially difficult to hone in on an exact diagnosis. Now with the psoriasis diagnosis on biopsy and basic survey for malignancy . . . and infection . . . being negative, we feel comfortable with the diagnosis of psoriatic arthritis versus seronegative rheumatoid arthritis.

AR 1454.

In his decision, the ALJ commented on Dr. Badour's earlier, September 19, 2014, treatment note hypothesizing a diagnosis of arthralgia and degenerative arthritis. The ALJ also observed that bilateral x-rays of plaintiff's hand showed only minimal spurring of the left carpometacarpal joint. But the ALJ failed to address any other treatment notes regarding plaintiff's hand and joint pain, and did not take account of the impact this impairment had on plaintiff's ability to work.[2]

The Commissioner contends, however, that ALJ was not required to address the medical records concerning the treatment and diagnosis of psoriatic arthritis. The Commissioner argues that the records concerning the treatment and diagnosis of this impairment occurred after the date plaintiff was last insured, and therefore are not probative. ECF No. 16 at 6; *see Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (to obtain DIB under Title II, a

---

[2] Although the ALJ considered degenerative arthritis, that is not the same as psoriatic arthritis. "Psoriatic arthritis is a chronic inflammatory arthritis that occurs in people with psoriasis of the skin or nails." The Merck Manual of Diagnosis and Therapy, 344 (19th ed. 2011). It is most prevalent in the fingers and toes, where inflammation "may lead to sausage-shaped deformities." *Id*. Degenerative, or Osteoarthritis is "characterized by disruption and potential loss of joint cartilage along with other joint changes, including bone hypertrophy." *Id*. at 345.

claimant must establish disability prior to the date last insured). The argument, however, unduly focuses on the date plaintiff's physicians were finally able to discern and diagnosis the causes of plaintiff's impairment, and not when those impairments began.

The record demonstrates that in June 2014, prior to the date last insured, Dr. Badour suspected that plaintiff had psoriatic arthritis or another inflammatory process and suggested a referral to rheumatology. AR 975. Medical records from August 2014, reflect plaintiff's reports of chronic joint pain that had worsened over the prior 6 to 8 months and was limiting her range of motion and impairing her ability to grip objects. *Id*. at 918-919. Although a diagnosis was not obtained until June 2015, these records reflect that plaintiff's psoriatic arthritis imposed limitations prior the December 31, 2014 date last insured.

Moreover, the failure to consider such evidence was not harmless. The ALJ concluded that plaintiff retained the ability to perform her prior work as a claims clerk I and II. AR 28. Both these positions require frequent handling. *See* Claims Clerk I, DOT 241.362-010, 1991 WL 672250; Claims Clerk II, DOT 205.367-018, 1991 WL 671716. As indicated above, the medical records concerning plaintiff's psoriatic arthritis reflect that the disease impairs plaintiff's ability to use her hands.

Accordingly, the medical records concerning plaintiff's psoriatic arthritis were probative to the period at issue. As the ALJ failed to explain why such probative evidence was rejected, the ALJ's RFC determination cannot be sustained. Accordingly, the matter must be remanded for the ALJ to consider how plaintiff's psoriatic arthritis impacted plaintiff's ability to work.[3] *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

/////

/////

---

[3] As the matter must be remanded for further consideration of the medical evidence of record, the court declines to address plaintiff's remaining arguments.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;
2. The Commissioner's cross-motion for summary judgment is denied;
3. The matter is remanded for further proceedings consistent with this order; and
4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: September 28, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE